IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

COREY JOHNSON, AIS #159228,       :

    Plaintiff,                    :

vs.                               :    CIVIL ACTION 03-0417-CG-M

JIMMY KILCREASE, et al.,          :

    Defendants.                   :


REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 1983 by an Alabama prison inmate, proceeding *pro se* and *in forma pauperis*, which has been referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Plaintiff claims that, while incarcerated at Holman Correctional Facility, Defendant Correctional Officer Jimmy Kilcrease physically attacked him, while Plaintiff was held by Defendant Correctional Officers Darwin Robinson and Danny Dixon, and that Defendant Correctional Officer Sharon Langham watched the assault and failed to intervene and stop the attack.[1] (Doc. 9 at 9-12, 14-15). Further, Plaintiff contends that Defendant

_____

[1]Plaintiff originally filed this action on July 1, 2003, (Doc. 1), but, because he used outdated complaint forms, on July 18, 2003, this Court ordered Plaintiff to file his complaint using the updated forms. (Doc. 3). Subsequently, Plaintiff filed his new complaint on the proper forms on August 26, 2003, (Doc. 9), and by this Court's order of July 18, 2003, this complaint supersedes the original. (Doc. 3).

Correctional Officer Donald Odom conspired with Defendant Kilcrease to find Plaintiff guilty of a disciplinary to cover for Defendant Kilcrease's alleged violent actions. (Doc. 9 at 9, 11-12, 15-16). Plaintiff also claims that, following the alleged incident, Defendant Warden Grant Culliver, Defendant Assistant Warden Levan Thomas, and Defendant Captain Watson Bishop failed to protect him from abuse. (Doc. 9 at 5-6, 9, 14). Plaintiff alleges that the actions of Defendants Kilcrease, Robinson, Dixon, Langham, Odom, Culliver, Thomas, and Bishop all violated the Eighth Amendment prohibition against cruel and unusual punishment, and, in addition, as to Defendant Kilcrease, Plaintiff alleges that he conspired with Defendant Odom, and further that Defendant Odom violated Plaintiff's due process rights. (Doc. 9). Finally, Plaintiff makes a general allegation that he lost excessive weight and suffered diminished health as a result of inadequate nutrition he received as a form of punishment while confined in disciplinary segregation. (Doc. 9 at 16).

As relief, Plaintiff seeks the following: a declaration that the "acts and omissions" described in the complaint violated Plaintiff's constitutional rights; compensatory and punitive damages against each defendant, plus interest,

2

attorneys fees, expenses and costs; a permanent injunction
ordering "defendants Bishop, Thomas, Culliver, their
successors, agents, employees, and all persons acting in
concert with them to intervene and/or stop needless assaults"
on inmates by correctional staff; an "injunction enjoining the
defendants from engaging in the conduct complained of, and for
such other further or different relief as may be just and
proper;" a "permanent injunction ordering defendants Culliver,
Bishop, Thomas, their successors, agents, employees, and all
persons acting in concert with them to provide plaintiff and
disciplinary seg inmates with adequate nutrition and to stop
the practice of depriving inmates of food as punishment;" a
"permanent injunction ordering defendants Bishop, Thomas, and
Culliver, their successors, agents, employees and all persons
acting in concert with them to protect plaintiff and
segregation inmates from hostile correctional staff, implement
an adequate training system for guards, increase staffing in
the seg. units to adequate levels, properly train correctional
officers to supervise inmates, discipline inmates and respond
to emergencies like staff assault upon inmates."[2] (Doc. 9 at

---

[2]The Court notes that as Plaintiff is no longer housed at
Holman, his claims for injunctive and declaratory relief are
now moot. *See*, *e.g.*, *Spears v. Thigpen*, 846 F.2d 1327, 1328

7, attachment 5).

Defendants Kilcrease, Robinson, Dixon, Langham, Odom, Culliver, Thomas, and Bishop filed an answer (Doc. 18) and a special report (Doc. 19) on December 21, 2004, denying that they violated Plaintiff's constitutional rights and asserting the following defenses: that Plaintiff has failed to state a claim; qualified immunity; absolute immunity; general defense; that Plaintiff has suffered only *de minimis* injuries; that Plaintiff's claim of excessive force is barred by the Prison Litigation Reform Act; that there is no causal connection between Plaintiff's claims and these Defendants; and respondeat superior.  (Docs. 18, 19).  On January 31, 2005,

---

(11th Cir. 1988) ("[t]his court has clearly stated the following: Absent class certification, an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred."); *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984) ("[t]he general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief."); *Wahl v. McIver,* 773 F.2d 1169, 1173 (11th Cir. 1985) ("[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").  "Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects."  *Wahl,* 773 F.2d at 1173 (citing *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974)).

4

this Court entered an Order converting Defendants' special report and answer to a motion for summary judgment. (Doc. 22). In response, on February 28, 2005, Plaintiff filed a motion for extension of time to respond to Defendants' motion for summary judgment. (Doc. 23). At the same time, Plaintiff filed an opposition to Defendants' motion for summary judgment, along with affidavits of Plaintiff as well as other inmates, reiterating Plaintiff's original claims. (Docs. 24, 25, and 26). The Court granted Plaintiff's motion for an extension of time, and in accordance with such, Defendants' motion for summary judgment, along with Plaintiff's opposition thereto, was taken under submission on March 22, 2005. (Doc. 27). After consideration by the Court, it is recommended that Defendants' motion for summary judgment be granted, that this action be dismissed with prejudice, and that judgment be entered in favor of Defendants Jimmy Kilcrease, Darwin Robinson, Danny Dixon, Sharon Langham, Donald Odom, Grantt Culliver, Levan Thomas, and Watson Bishop and against Plaintiff Corey Johnson on all claims.

## I. FACTS

On May 28, 2003, while incarcerated at Holman Correctional Facility ("Holman"), Plaintiff claims that he was

assaulted by Defendant Kilcrease, while Plaintiff was on his way to take a shower.  Plaintiff alleges that on that day, while in disciplinary segregation, certain inmates were "flooding" their cells in protest of receiving cold showers. According to Plaintiff, although he was not flooding his cell, his water supply was terminated by Defendant Kilcrease.  (Doc. 24 at 2-3).  Plaintiff acknowledges that he then proceeded to curse Defendant Kilcrease and to expose himself to Defendant Kilcrease who in turn allegedly cursed and threatened Plaintiff.  (Doc. 24 at 3).  Plaintiff alleges that when it was his turn to shower, Defendant Robinson came to his cell and handcuffed Plaintiff's hands behind his back.  (*Id.*). Subsequently, according to Plaintiff, as he was proceeding to the shower area, Defendant Kilcrease shoved Plaintiff into the wall and warned Plaintiff to never expose himself to Defendant Kilcrease again.  (*Id.*).  Plaintiff further alleges that Defendant Kilcrease continuously punched him in the face and banged his head into the wall.  (*Id.*).  Plaintiff continued to curse Defendant Kilcrease, who allegedly held his baton as if he were going to hit Plaintiff, and threatened that next time he would "bash" Plaintiff's head in.  (*Id.*).

It is alleged that at this point Defendants Dixon and

Langham joined Defendants Kilcrease and Robinson at the scene, and Defendants Robinson, Dixon, and Langham were escorting Plaintiff to the infirmary when Defendant Kilcrease approached Plaintiff from behind and started punching him again.  (*Id.*). Plaintiff acknowledges that he then attempted to kick Defendant Kilcrease.  (*Id.*).  According to Plaintiff, Defendants Dixon and Robinson held him at this time and allowed Defendant Kilcrease to repeatedly beat him in the face, and Defendant Langham stood by and watched.[3] (*Id.*).

Subsequently, Plaintiff was charged with a violation of Rule # 29, for assault on an officer without a weapon. According to Plaintiff, he was advised on June 2, 2003, by

---

[3]Plaintiff has filed the affidavits of fellow inmates, Schuyler Wimberly, Marcus Lipsey, and Travis Griggs, who offer facts consistent with those pled by Plaintiff in this action. (Doc. 24 at 4-9).  Additionally, Plaintiff has filed a copy of a letter allegedly written by inmate Marcus Lipsey to Defendant Culliver regarding the incident complained of in this action, as well as referencing general complaints of racism by the guards.  (*Id.* at 10-11).  Twelve inmates, including Plaintiff, signed the letter.  (*Id.*).  Further, Plaintiff attached to his pleading numerous copies of complaints alleging the same facts as pled in this action. (Doc. 24 at 12-28).  The individual complaints appear to have been addressed separately to Defendant Warden Culliver, Federal Bureau of Investigations, Paul Whaley, James Powers, Donal Campbell, and Defendant Thomas.  (*Id.*).  Additionally, Plaintiff filed a copy of the disciplinary which he received as a result of the incident made the basis of this Complaint, as well as disciplinary reports dated February 24, 2003, and June 16, 2003.  (*Id.* at 29-38).

Defendants Kilcrease and Odom that they were going to "take care of [him] for a year" and that they were going to be sure Plaintiff was found guilty of the disciplinary. (Doc. 9 at 15). On June 3, 2003, Plaintiff received a disciplinary hearing which he contends was in violation of his due process rights under the Fourteenth Amendment. Defendant Odom was the hearing officer. Plaintiff stated at this disciplinary hearing that he believed that he was given a disciplinary to "cover" for Defendant Kilcrease's "assaultive behavior." (*Id.*). Plaintiff contends that Defendants Kilcrease and Odom referred to him as a "black ass nigger boy" and informed him that this was "their house" and that they would not let him "win" at the hearing. (*Id.*). Two inmates were present to testify on behalf of Plaintiff, and Defendant Robinson was also present to testify at the hearing. (*Id.*). Plaintiff claims that as a result of the conspiracy between Defendants Kilcrease and Odom at the disciplinary hearing, he was given 45 additional days in segregation, 45 days loss of privileges, and taken out of good-time earning status for one year. (*Id.* at 16).

Finally, Plaintiff makes a general claim that he has been provided inadequate nutrition while confined in disciplinary segregation, and that the "unbalanced and unwholesome diet" is

provided as a form of punishment. (*Id.*). Plaintiff claims that this "inadequate nutrition" has caused him to lose an excessive amount of weight. (*Id.*).

According to Defendants, on May 28, 2003, Officer Kilcrease was escorting Plaintiff to the shower, when Plaintiff began verbally abusing Defendant Kilcrease, complaining about the shower water being cold. (Doc. 19 at 3; Affidavit of Jimmy Kilcrease). Upon arrival at the shower, Plaintiff, who had continued his use of profanity toward Defendant Kilcrease, turned toward Defendant and approached him in an aggressive manner and attempted to kick Defendant Kilcrease. (Doc. 19, Affidavit of Jimmy Kilcrease). Defendant Kilcrease ordered Plaintiff into the shower, but Plaintiff refused. (*Id.*). Defendant Robinson heard the commotion and appeared to assist Defendant Kilcrease when Plaintiff attempted to struggle to break away. (Doc. 19, Affidavits of Kilcrease and Robinson). According to Officer Robinson, he grasped Plaintiff by the handcuffs while Plaintiff was struggling and attempting to spit on Officer Kilcrease. (Doc. 19, Affidavit of Robinson). According to Officers Kilcrease and Robinson, they then placed Plaintiff against the wall until Plaintiff calmed down. (Doc. 19, Affidavits of Kilcrease and Robinson). Officer Kilcrease has

further averred that he ordered Plaintiff back to his cell,
and when he refused, Officer Kilcrease along with Officer
Robinson attempted to forcefully return Plaintiff to his cell.
(Doc. 19, Affidavit of Robinson).  At some point, Plaintiff
broke away, and ran toward Defendant Officer Kilcrease and
spit on him, and in response, Officer Kilcrease hit Plaintiff
with a closed fist, knocking Plaintiff to the ground.  (Doc.
19, Affidavit of Kilcrease).  Subsequently, Defendant Officer
Dixon and Lt. Burrell arrived to assist in escorting Plaintiff
to the infirmary for a body chart.  Lt. Burrell and Defendant
Officer Dixon escorted Plaintiff to the infirmary with no
further incident.  (Doc. 19, Affidavit of Dixon).  A body
chart was prepared by the medical personnel indicating that
Plaintiff sustained a one half centimeter laceration under the
left eye for which no stitches were required and a goose egg
bump above the right temple.  Plaintiff was then released back
to security and escorted back to segregation.  (Doc. 19 at 4;
Treatment Record of May 28, 2003).

Defendants assert that as a result of Plaintiff's
behavior, he received a disciplinary for assault on a DOC
official.  According to Defendants, Plaintiff received a
hearing on this disciplinary, along with all of his due
process rights.  Defendant Officer Odom, the hearing officer,
has explained under oath that as part of his job at Holman, he

10

routinely must serve as hearing officer during disciplinary hearings. (Doc. 19, Affidavit of Donald Odom). On June 3, 2003, Officer Odom claims that he was the hearing officer on Disciplinary HP03-563 in which Officer Kilcrease charged Plaintiff with rule violation # 29, assault on an officer without a weapon. (*Id.*). After hearing testimony from Defendant Kilcrease, Plaintiff, and Plaintiff's witness, he found Plaintiff guilty of rule violation # 29. Defendant Odom recommended to the Warden that Plaintiff should receive 45 days of disciplinary segregation, 45 days loss of all privileges, "referred him to the I&I, and recommended that [Plaintiff] be placed in class IV earning status for one year." (*Id.*). These recommendations were approved by Defendant Deputy Warden Thomas. (*Id.*). Further, Defendant Odom avers that during his career, he has never made profane or derogatory remarks to an inmate, officer, employee, or any other person, and that he has always tried to be fair and impartial during the hearings, never conspiring with another officer to find an inmate guilty. (*Id.*).      Further, Defendant Kilcrease avers that he used force on Plaintiff only to stop Plaintiff from assaulting him and to gain control over Plaintiff. (Doc. 19, Affidavit of Kilcrease). Moreover, Defendant Officer Kilcrease states that he never used any

racial slurs toward Plaintiff at any time, and that he did not conspire with Defendant Officer Odom to find Plaintiff guilty of the disciplinary. (*Id.*).

Defendant Warden II Levan Thomas has averred that he has never ignored or shown indifference to a verbal or written complaint sent to him by Plaintiff regarding the subject incident or any incident. (Doc. 19, Affidavit of Levan Thomas). According to Defendant Thomas, each time he has received a verbal or written complaint from Plaintiff regarding an incident in which he was involved, the investigation has always revealed that Plaintiff initiated the incident. (*Id.*). According to Defendant Warden II Thomas, from January 1, 2003, to May 2003, prior to the subject incident, Plaintiff had received seven major disciplinaries in which he demonstrated aggression or disrespect to authority. (*Id.*).

Defendant Correctional Officer Supervisor II Watson Bishop also submitted an affidavit reiterating the facts of this incident as explained by Defendants Kilcrease and Robinson. (Doc. 19, Affidavit of Watson Bishop). Defendant Bishop notes that Plaintiff was examined by the medical staff at the prison and was treated for a small laceration under Plaintiff's left eye and a bump above his right temple.

(*Id.*).  Defendant Bishop avers that Plaintiff physically attacked Defendant Kilcrease, and that a reasonable amount of force was used by Officer Kilcrease to gain control of the situation.  Further, Defendant Bishop asserts that Plaintiff was not abused or mistreated by any of the officers on the scene that day.  (*Id.*).

Finally, Defendant Grantt Culliver has declared in his affidavit that he spoke with Plaintiff on several occasions while Plaintiff was housed at Holman.  (Doc. 19, Affidavit of Grantt Culliver).  According to Defendant Culliver, Plaintiff normally would complain about staff after receiving disciplinary action for a rule violation.  (*Id.*).  Defendant Culliver acknowledges that on occasion Plaintiff would complain that he had been provoked or that excessive force had been used when the officers attempted to perform their assigned duties.  (*Id.*).  On the occasions Plaintiff made those complaints, the incident reports would be reviewed and the supervisor questioned about the incidents.  (*Id.*).  Defendant Culliver has no recollection of any incidents in which Plaintiff's claims appeared to be valid.  (*Id.*).  Although Warden Culliver does recall some problems at that time with the hot water and showers in the segregation unit, he does not recall this particular incident involving

13

Plaintiff.  (*Id.*).  Based upon Warden Culliver's review of the incident report and upon his understanding of the facts as stated by Defendants Kilcrease and Robinson, Officer Kilcrease had reason to fear bodily harm from inmate Johnson and took means to protect himself.  (*Id.*).  It is Warden Culliver's opinion that Defendant Kilcrease did not use excessive force against Plaintiff.  (*Id.*).  Further, Warden Culliver has reviewed the disciplinary and has determined that the procedure was completed according to policy, contrary to Plaintiff's claims of a conspiracy between Officers Kilcrease and Odom.[4]  (*Id.*).

   As a result of the alleged assault, Plaintiff contends that he received a laceration to the left eye, swelling to the eye and face, a large knot on the right side of his head and continues to experience headaches and dizziness.  Further, Plaintiff claims that he has also suffered emotional and mental harm.  Plaintiff has requested declaratory and injunctive relief, compensatory and punitive damages. (Doc. 9 at 14).

<u>II. SUMMARY JUDGMENT STANDARD</u>

---

   [4]Defendant Sharon Langham has averred that she is employed by the Alabama Department of Corrections as Correctional Officer I, but that she was not present when the subject incident occurred.  (Doc. 19, Affidavit of Sharon Langham). Officer Langham declares that she has no knowledge of the subject incident.  (*Id.*).

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting *Fed. R. Civ. P.* 56(c)).  The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party.  *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

*Fed. R. Civ. P.* 56(e); *see also Celotex Corp.*, 477 U.S. at 325-27.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party.  If the evidence is merely
colorable or is not significantly probative, summary judgment
may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
242, 249-50 (1986) (internal citations omitted).  "Summary
judgment may be granted against a party who fails to establish
the existence of an element essential to that party's case and
on which that party will bear the burden of proof at trial."
*Liberty Mut. Fire Ins. Co. v. Sahawneh*, 2001 WL 530424, *1
(S.D. Ala. May 11, 2001) (citing *Anderson*, 477 U.S. at 249-
50).

## III. DISCUSSION

In this action, Plaintiff seeks redress for an alleged
constitutional deprivation pursuant to 42 U.S.C. § 1983.
Section 1983 provides that:

> Every person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects, or causes
> to be subjected, any citizen of the United
> States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities
> secured by the Constitution and laws, shall
> be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress. . . .  For the
> purposes of this section, any Act of
> Congress applicable exclusively to the
> District of Columbia shall be considered to
> be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994).

16

Plaintiff claims that Defendant Officer Kilcrease assaulted him, as Defendant Officers Robinson and Dixon held him, and that Defendant Officer Langham simply watched and failed to intervene. Plaintiff claims that these actions, along with the lack of action by Defendant Warden Culliver, Defendant Thomas, and Defendant Bishop, violated his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 9 at 14). Plaintiff further claims that Defendant Officer Odom conspired with Defendant Officer Kilcrease to find him guilty of the disciplinary he received after the incident, thus violating his Fourteenth Amendment due process rights.[5] (*Id.*, at 14-16). The Court will first address Plaintiff's excessive force claim against Defendant Officers

---

[5]Plaintiff states that he is suing Defendants in their official capacities for declaratory and injunctive relief, and in their individual capacities for damages. (Doc. 9 at 9-12). As state officials, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the plaintiffs, show that the government official's conduct violated a constitutional right." *Dalrymple*, 334 F.3d at 995 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Having determined herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

Kilcrease, Robinson, Dixon, and Langham.

A.  Excessive Force Claim

Plaintiff claims that Officer Kilcrease used excessive force in violation of the Eighth Amendment, assaulting him by throwing him against a brick wall on his way to shower, and by repeatedly punching and beating him in the face.  (Doc. 9 at 9-10).  Further, Plaintiff claims that Officers Robinson, Dixon, and Langham either assisted in the excessive force, or failed to intervene in the incident, thus violating Plaintiff's Eighth Amendment rights.  Defendants deny Plaintiff's allegations, and maintain that a reasonable amount of force was used toward Plaintiff only when Plaintiff refused to follow orders, and acted aggressively toward Officer Kilcrease.[6]  (Doc. 19, Affidavits of Jimmy Kilcrease, Darwin Robinson, and Danny Dixon).

In addressing an excessive force claim brought under § 1983, the Court begins its analysis "by identifying the specific constitutional right allegedly infringed by the challenged application of force."  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The Eighth Amendment, which attaches "after conviction and sentence," protects incarcerated prisoners from

---

[6]According to Officer Langham's affidavit, she was not present at the scene of this incident, and thus has no knowledge regarding the alleged incident.  (Doc. 19, Affidavit of Sharon Langham).

18

punishment that is "cruel and unusual." *Graham*, 490 U.S. at
393 n.6; *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16
(1979); *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).
Specifically, the Eighth Amendment "prohibits the unnecessary
and wanton infliction of pain. . . , the infliction of pain
totally without penological justification. . . , [and] the
infliction of punishment grossly disproportionate to the
severity of the offense." *Ort v. White*, 813 F.2d 318, 321
(11th Cir. 1987)(citing *Rhodes v. Chapman*, 452 U.S. 337, 346
(1981)).  At the time of the alleged use of excessive force in
this case, Plaintiff was being held at Holman after being
convicted in 2001 of receiving stolen property and sentenced
to fifteen years in prison.  (Doc. 9  at 7).  Thus, the Eighth
Amendment applies to this case.

In order to establish an Eighth Amendment claim,
Plaintiff must prove both an objective and subjective
component.  First, Plaintiff must show that the alleged
wrongdoing was objectively "harmful enough" to establish a
constitutional violation, and, second, Plaintiff must show
that the official "act[ed] with a sufficiently culpable state
of mind," *i.e.*, that he acted "maliciously or sadistically to
cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).  In
the prison security context, the factors used to determine

whether there has been a violation of the Eighth Amendment
are: the need for the application of force, the relationship
between that need and the amount of force used, the threat
reasonably perceived, any efforts to temper the severity of a
forceful response, and the extent of injury suffered. *Id.*,
503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321
(1986) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.
1973)).

Considering the evidence in the light most favorable to
Plaintiff, the question is whether a jury could reasonably
conclude that Defendants violated Plaintiff's rights under the
Eighth Amendment.  Under the circumstances of this case, the
Court finds that Plaintiff's allegations fail to establish a
constitutional violation.

According to Plaintiff, on the day in question, in
response to having his water turned off in his cell, he
exposed himself to Officer Kilcrease, while cursing him. (Doc.
24 at 3).  Plaintiff also acknowledges attempting to kick
Officer Kilcrease while out of his cell. (*Id.*).   Plaintiff
asserts that Officer Kilcrease shoved him against a wall and
repeatedly hit him in the face for no reason.  (Docs. 3 and
27).  However, the evidence in this action reflects that
Officer Kilcrease was, in response to Plaintiff's cursing and
aggression, attempting to have Plaintiff return to his cell,

20

in an apparent attempt to maintain security and restore
discipline.  This Court has previously noted that "[w]e give a
wide range of deference to prison officials' actions in
preserving discipline and security." *Anderson v. Jones*, 1999
WL 1565203, * 7 (S.D. Ala. 1999), *aff'd without opinion*, 245
F.3d 795 (11th Cir. 2000).  "[T]he management by a few guards
of large numbers of prisoners, not usually the most gentle and
tractable of men and women, may require and justify the
occasional use of a degree of intentional force." *Id.*,
quoting *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir.
1990).  It is undisputed that at least at one point during the
incident Plaintiff was attempting to kick Officer Kilcrease.
Further, Plaintiff has not proven that Defendants were acting
"maliciously or sadistically to cause harm." *Hudson*, 503 U.S.
at 7-8.  Moreover, assuming Plaintiff's allegations of
excessive force as true, Plaintiff still must establish that
this alleged use of force violated his constitutional rights.
This, Plaintiff has failed to do.

     In evaluating Plaintiff's claim of excessive force, the
Court is mindful that, while an inmate must be protected from
the "unnecessary and wanton infliction of pain by prison
officials," prison officials must maintain order and
discipline "in an often dangerous and unruly environment."

*Ort*, 813 F.2d at 321-22.  Thus, prison officials must be extended deference in acting to insure the proper administration, safety, and security of a penal institution. *Id.*  "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense."  *Id.* at 323.

Indeed, inherent in the protection afforded by the Eighth Amendment is the principle that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Clark v. Johnson*, 2000 WL 1568337, *12 (S.D. Ala. 2000) (quoting *Hudson*, 503 U.S. at 9-10).  The objective component of an Eighth Amendment excessive force claim "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327).

While the Supreme Court in *Hudson* did not define "*de minimis* use of force," it held that neither "serious" nor "significant" injury is required to satisfy the objective component of an Eighth Amendment claim, nor is any arbitrary

22

quantum of injury an absolute requirement of an excessive
force claim, apparently out of concerns that certain forms of
torture are capable of inflicting extreme pain without leaving
any mark or tangible injury. *Id.* at 9 ("Otherwise, the Eighth
Amendment would permit any physical punishment, no matter how
diabolic or inhuman, inflicting less than some arbitrary
quantity of injury.").  At the same time, the Court suggested
that the degree of injury received is relevant to determining
whether more than *de minimis* force was used. *See id.*, 503
U.S. at 10 (blows causing bruising, swelling, loosened teeth
and a cracked dental plate do not constitute a *de minimis* use
of force).

In the present case, there are no allegations of torture
designed to inflict extreme pain without leaving tangible
injury or conduct that otherwise is so egregious that one
could reasonably call it repugnant to the conscience of
mankind.  Therefore, if Plaintiff suffered only *de minimis*
injuries, that would be an important factor in determining
whether more than *de minimis* force was used.

It is undisputed that Plaintiff was taken to the prison
infirmary immediately following the incident and examined by
the medical staff. (Doc. 19 at 3; Treatment Record of May 28,
2003; Doc. 24 at 3).  Plaintiff's medical record on May 28,
2003, reflects that he suffered a one half centimeter

23

laceration under his left eye which required no stitches, along with a contusion over his right temple.  There is no indication that Plaintiff voiced any complaint of pain or discomfort of any kind at that time.  (Doc. 19, Treatment Record of May 28, 2003).  Plaintiff was treated for the small laceration which was noted to have "small amount of bleeding," and discharged ten minutes later.  (*Id.*).  The record reflects that no pain medication was prescribed.  (*Id.*).

Plaintiff's only claim of injury in this action is that he suffered the small laceration and contusion, along with conclusory allegations of headaches and mental suffering.[7] (Doc. 9 at 14).  Plaintiff's alleged injury simply does not establish a constitutional violation under the circumstances of this case.

In determining whether the extent of Plaintiff's alleged injury indicates the use of excessive force in this case, the Court finds instructive the types of injuries which have been held by courts of appeal to be insufficient to support excessive force claims under the Eighth Amendment, such as: lacerations, bruises, cuts, and swelling as a result of a

_____

[7]Prison medical records indicates complaints of headaches by Plaintiff on June 2, 2003, and June 4, 2003.  The treatment given was limited to an instruction to rest and to take tylenol or motrin purchased from the canteen.  (Doc. 19, Medical Records).

24

guard hitting plaintiff's hand with a plastic box when plaintiff reached through a trap in the door of his cell, *White v. Matti*, 2002 WL 31887792, *2 (7th Cir. 2002) (unpublished); bruises on a prisoner's back from being shoved into a door frame, *DeWalt v. Carter,* 224 F.3d 607, 620 (7th Cir. 2000); pain, swelling, and bruising from a guard closing a cuffport door on a prisoner's hand, *Outlaw v. Newkirk,* 259 F.3d 833, 839-40 (7th Cir. 2001); a bruised shoulder from being shoved into a wall, *Markiewicz v. Washington*, 175 F.3d 1020, *1 (7th Cir. 1999) (unpublished); a sore, bruised ear lasting three days, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); a 1.5 inch scratch on the back of the hand from handcuffs, *Schoka v. Swinney*, 53 F.3d 340, *1 (9th Cir. 1995) (unpublished); daily headaches, not requiring treatment, from being hit with a water bucket, *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir. 1994); and a sore and swollen thumb from being hit with keys, *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994).

This Court also has found certain injuries to be insufficient to support an Eighth Amendment excessive force claim: a scratch on plaintiff's side from a correctional officer pushing, shoving, and hitting plaintiff in an effort to force him to comply with an order to pick up his hoe and get back to work, *Walker v. Thames*, 2001 WL 394911, * 6 (S.D.

Ala. 2001); scratches on plaintiff's elbow, bump and one-half inch skin tear behind the ear, abrasion on the shoulder, and jaw pain from correctional officer pushing plaintiff into a glass window while taking him to a holding cell, *Lanier v. Fralick*, 2000 WL 1844679, *5-6 (S.D. Ala. 2000); blow to the forehead with a baton, resulting in no bruising or swelling, *Clark*, 2000 WL 1568337, *18-19.

On the other hand, the following types of injuries have been held by courts of appeal to be sufficient to support excessive force claims: cuts, scrapes and contusions to the face, head, and body from a group beating, *Gomez v. Chandler*, 163 F.3d 921, 925 (5th Cir. 1999); a broken finger, *Escobar v. Zavaras*, 149 F.3d 1190, *3 (10th Cir. 1998) (unpublished); cuts, bruises, a swollen hand and a possible broken finger, *Mitchell v. Maynard*, 80 F.3d 1433, 1440-41 (10th Cir. 1996); and permanent scarring and numbness from handcuffs, *Davidson v. Flynn*, 32 F.3d 27, 29 n.1 (2d Cir. 1994).

Also, in *Anderson v. Jones*, 1999 WL 1565203, *6-7 (S.D. Ala. 1999), *aff'd without opinion*, 245 F.3d 795 (11th Cir. 2000), this Court found the approach used by some courts to evaluate claims of physical injury under 42 U.S.C. § 1997e(e), to be instructive in evaluating a plaintiff's injuries in an Eighth Amendment excessive force claim:

> "[T]here are numerous scrapes, scratches,
> cuts, abrasions, bruises, pulled muscles,
> back aches, leg aches, etc., which are
> suffered by free world people in just
> everyday living for which they would never
> seek professional medical care.  Thus, an
> appropriate *de minimis* standard would be
> whether as a common-sense category approach
> to the injury: would the injury require or
> not require a free world person to visit an
> emergency room, or have a doctor attend to,
> give an opinion, diagnosis and/or medical
> treatment for the injury?)"

*Anderson*, 1999 WL 1565203, *6 (plaintiff's *de minimis* injuries
from prison guard hitting him with her fist after he had been
restrained were "beyond constitutional recognition") (quoting
*Luong v. Hatt,* 979 F. Supp. 481, 486 (N.D. Tex. 1997)).

Although the Court is aware that, even in the absence of
serious or significant injury, a plaintiff can establish a
constitutional claim based on excessive force, Defendants'
actions in this case, as described by Plaintiff, do not
involve diabolic or inhuman torture designed to inflict
extreme pain without leaving any mark or tangible injury, nor
are they otherwise so egregious that one could reasonably call
them repugnant to the conscience of mankind.  Assuming, as
Plaintiff alleges, that Officer Kilcrease pushed him against a
wall and hit him in the face while Officers Robinson and Dixon
held him, and Officer Langham watched, his injury, *if any*, was
temporary and *de minimis* and simply does not support his claim
that he was subjected to anything other than *de minimis* force,
which is insufficient to establish a constitutional violation
under the Eighth Amendment.  While the Court certainly does
not condone the unjustified use of force by prison officials,

27

Plaintiff's allegations regarding Officers Kilcrease, Robinson, and Dixon's use of force against him fall short of what is required to state a claim for excessive force under the Eighth Amendment.  As Plaintiff has failed to prove a constitutional violation, all cruel and unusual punishment claims against Defendants Kilcrease, Robinson, Dixon, Langham, Culliver, Thomas and Bishop are due to be dismissed.

B.  Conditions of Confinement Claim

Plaintiff has also attempted to assert a conditions of confinement claim by alleging that while housed in disciplinary segregation, he was given an "unbalanced and unwholesome" diet as a form of punishment. (Doc. 9 at 16). Plaintiff complains that, as a result of the alleged inadequate nutrition, he has lost an excessive amount of weight and has suffered diminished health. (*Id.*).

In *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189 (1989), the United States Supreme Court reiterated the State's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . .  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- *e.g.*, food, clothing, shelter, medical care, and reasonable

> safety -- it transgresses the substantive
> limits on state action set by the Eighth
> Amendment and the Due Process Clause.

*DeShaney*, 489 U.S. at 199-200 (citations omitted).

In order to prevail on an Eighth Amendment inhumane conditions of confinement claim, an inmate must make both an objective and a subjective showing. First, the inmate must prove that the conditions of confinement were, "objectively, 'sufficiently serious'" so as to amount to the denial of a basic human need. *Farmer*, 511 U.S. at 834. Second, the inmate must prove that the prison official was subjectively "deliberately indifferent" to a substantial risk of harm. *Id.* at 828-29. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. In addition, prison officials are not liable even if they actually knew of a risk if they responded reasonably to the risk. *Id.* at 844.

Having set forth the general legal principles applicable to Plaintiff's claim, the Court now turns to the facts. Plaintiff has failed to make any specific allegations

29

regarding how much weight he has lost, nor specifically how much food he received while in disciplinary segregation. Plaintiff has provided the Court with no medical records indicating any alleged weight loss.[8]  Rather, Plaintiff has merely made a conclusory allegation that he suffered from inadequate nutrition while in disciplinary segregation at Holman.  Under the circumstances of this case, Plaintiff's allegations do not amount to the denial of a basic human need, *see DeShaney*, 489 U.S. at 199-200, nor do they evidence a deliberate indifference to a substantial risk of serious harm to the Plaintiff's health or safety.  *See Farmer*, 511 U.S. at 837-38.

Considering Plaintiff's allegations regarding the conditions of his confinement while in disciplinary segregation at Holman, the Court finds that these allegations fail to rise to the level of a constitutional violation. Accordingly, the Court finds that Plaintiff's § 1983 claim against Defendants related to the conditions of his confinement fails as a matter of law.

C.  Due Process Claim

Finally, Plaintiff alleges that Defendant Odom violated his Fourteenth Amendment due process rights by conspiring with Defendant Kilcrease to find him guilty of the disciplinary he received as a result of the subject incident.  Plaintiff

---

[8]The Court notes that a review of Plaintiff's medical records provided by Defendants fails to reflect a significant change in Plaintiff's weight while incarcerated at Holman. (Doc. 19, Medical Records).

contends that due to the "conspiratorially planned hearing,"
he was denied a fair and impartial hearing. (Doc. 9 at 15-
16). The Due Process Clause of the Fourteenth Amendment to
the United States Constitution provides that the rights to
life, liberty, and property cannot be deprived without due
process of law, which means that the individual being deprived
of the right must be afforded constitutionally adequate
procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S.
532, 541, 105 S. Ct. 1487, 1493, 84 L. Ed. 2d 494 (1985). In
addition to procedural due process, the Due Process Clause
guarantees substantive due process. *DeKalb Stone, Inc. v.
County of DeKalb, Ga.*, 106 F.3d 956, 959 (11th Cir. 1997)
(citing *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975,
983, 108 L. Ed. 2d 100 (1990)). "Substantive due process
includes both the protections of most of the Bill of Rights,
as incorporated through the Fourteenth Amendment, and also the
more general protection against 'certain arbitrary, wrongful
government actions regardless of the fairness of the
procedures used to implement them.'" *Id.* "A decision can be
shown to be unconstitutionally arbitrary and capricious 'only
when it is plain and palpable that it has no real or
substantial relation to the public health, safety, morals, or
to the general welfare.'" *Housing Investors, Inc. v. City of
Clanton, Ala.*, 68 F. Supp. 2d 1287, 1301 (M.D. Ala. 1999)
(quoting *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526,
530-31, 37 S. Ct. 190, 192, 61 L. Ed. 2d 472 (1917)).

"Determining whether one was deprived of liberty presents

31

a unique challenge with prisoners, who are already deprived of
their liberty in the ordinary understanding of the word."
*Kirby v. Siegelman*, 195 F.3d 1285, 1290 (11th Cir. 1999).  The
United States Supreme Court has identified two circumstances
in which an inmate may be deprived of his liberty such that
due process is required.  The first circumstance is when a
change in an inmate's conditions of confinement is so severe
that it essentially "exceed[s] the sentence in such an
unexpected manner as to give rise to protection by the Due
Process Clause of its own force."  *Sandin v. Conner*, 515 U.S.
472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed. 2d 418 (1995).
The second circumstance is when the state has consistently
bestowed a certain benefit to inmates (for instance, via
statute or administrative policy), and the deprivation of that
benefit "imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life."
*Id*.  "In the first situation, the liberty interest exists
apart from the state; in the second situation, the liberty
interest is created by the state."  *Bass v. Perrin*, 170 F.3d
1312, 1318 (11th Cir. 1999).

In this case, Plaintiff claims that he was deprived of
due process when he was found guilty of a violation of Rule #
29, assault on an officer without a weapon and received a
punishment of 45 days in disciplinary segregation, 45 days
loss of all privileges, and was placed in class IV earning
status for one year.  (Doc. 19, Disciplinary Report).
Initially, a court generally looks at whether a plaintiff has

32

a protected liberty interest in the issued sanctions.
However, even assuming without deciding that Plaintiff had a
protected liberty interest in his sanctions, this Court finds
that Plaintiff did in fact receive due process during his
disciplinary hearing on June 3, 2003, and therefore,
Plaintiff's due process claim should be dismissed.

In *Wolff v. McDonnell*, 418 U.S. 539, 563, 94 S. Ct. 2963,
2978, 41 L. Ed. 2d 935 (1974), the Supreme Court held that an
inmate facing disciplinary action must be given "advance
written notice of the claimed violation and a written
statement of the factfinders as to the evidence relied upon
and the reasons for the disciplinary action taken" to meet
minimum requirements of procedural due process.  The inmate
should be given no less than 24 hours to prepare for his
hearing.  418 U.S. at 564, 94 S. Ct. at 2979.  The Court also
held that the inmate "should be allowed to call witnesses and
present documentary evidence in his defense when permitting
him to do so will not be unduly hazardous to institutional
safety or correctional goals."  418 U.S. at 566, 94 S. Ct. at
2979.

Defendants clearly complied with the procedural due
process mandate set forth in *Wolff*.  On May 31, 2003,
Plaintiff was given written notice that a disciplinary hearing
would be conducted on June 3, 2003, regarding his behavior on
May 28, 2003.  (Doc. 19, Disciplinary Report).  In the notice,
Plaintiff was informed that he was being charged with a
violation of Rule # 29, specifically assault on an officer

33

without a weapon from regulation # 403.  Plaintiff was further
provided with the alleged specific circumstances of the
violation.  He was advised that he would be given an
opportunity to be heard, as well as to present witnesses,
which Plaintiff in fact did.  (*Id.*).  The arresting officer,
Defendant Kilcrease, testified, along with witnesses Defendant
Robinson and Raymond Leonard.  The hearing officer, Defendant
Odom, made a written statement setting forth the evidence
relied upon, including Plaintiff's comments, and the reasons
for the specified punishment.  The hearing officer recommended
that Plaintiff be punished with 45 days disciplinary
segregation, 45 days loss of all privileges, referred to I &
I, and further recommended that Plaintiff be placed in class
IV earning status for one year.  (*Id.*).  This recommendation
was considered and approved by the Warden on June 4, 2003.
(*Id.*).  Neither Plaintiff's allegations nor the evidence
presented establishes that he was denied his right to
procedural nor substantive due process under the Fourteenth
Amendment with regard to his hearing and punishment;
therefore, Defendant Odom is entitled to summary judgment as
to that claim.

Further, Plaintiff asserts that he was denied due process
based upon allegations of a conspiracy between Defendants Odom
and Kilcrease.  (Doc. 9 at 14-16).  Plaintiff contends that
Defendant Odom found him guilty of the subject disciplinary in
an attempt to cover for Defendant Kilcrease's alleged
assaultive behavior.  Plaintiff offers no additional facts or

34

evidence other than that the two Defendants conspired against him.  In order to state a conspiracy claim under § 1983, a plaintiff must show the parties reached an understanding to violate his federal rights.  *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.), *cert. denied*, 500 U.S. 932, 111 S. Ct. 2053, 114 L. Ed. 2d 459 (1991).  "The linchpin for conspiracy is agreement, which presupposes communication."  *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002) (quoting *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1990)).  Plaintiff has failed to allege any facts to show there was an agreement.  Plaintiff's conclusory conspiracy claim is therefore due to be dismissed. *Accord Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984) (vague and conclusory conspiracy claims are subject to dismissal).

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," Rule 56(c) mandates that summary judgment be entered against the nonmovant.  *Celotex Corp.*, 477 U.S. at 322.  "No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation."  *Bennett*, 898 F.2d at 1534.  Therefore, since no constitutional violation has been established, Defendants' motion for summary judgment is due to be granted.

                              IV. CONCLUSION

Based on the foregoing, the Court concludes that

                                     35

Defendants Jimmy Kilcrease, Darwin Robinson, Danny Dixon, Sharon Langham, Donald Odom, Grantt Culliver, Levan Thomas, and Watson Bishop are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' motion for summary judgment be granted and dismissed with prejudice, and that judgment be entered in favor of Defendants Jimmy Kilcrease, Darwin Robinson, Danny Dixon, Sharon Langham, Donald Odom, Grantt Culliver, Levan Thomas, and Watson Bishop and against Plaintiff Corey Johnson on all claims.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.  <u>Objection</u>.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief

in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 22nd day of June, 2005.


                              _____
                              <u>s/BERT W. MILLING, JR.</u>
                              UNITED STATES MAGISTRATE JUDGE